UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

MINHAJ FEROZ MUHAMMAD and
SUFYAN FEROZE,

Defendants.

No. 25 CR 318

Judge Matthew F. Kennelly

## MOTION TO MODIFY CONDITIONS OF RELEASE

The UNITED STATES OF AMERICA, by its attorney, LORINDA LARYEA, Acting Chief of the Fraud Section, Criminal Division of the United States Department of Justice, respectfully requests that upon arraignment for charges set forth in the Superseding Indictment, this Court modify the conditions of release previously imposed upon defendants Minhaj Feroz Muhammad ("MUHAMMAD") and Sufyan Feroze ("FEROZE") to require location monitoring and the imposition of a secured bond that must be satisfied by funds that are not derived from fraud proceeds. Such additional security is needed due to defendants' risk of flight, misrepresentations to Pretrial Services, and flagrant violations of their terms of release.

## BACKGROUND

1. On June 13, 2025, as he was boarding an international flight on a one-way ticket, defendant MUHAMMAD was arrested after having been charged by complaint with one count of health care fraud, in violation of 18 U.S.C. § 1347, in connection with his involvement with a laboratory, FZ Medical Group Inc. ("FZ

1

MEDICAL"), that allegedly submitted billing for COVID-19 testing services not rendered. *See* Dkt. No. 1. On June 18, 2025, a grand jury indicted MUHAMMAD on the same charge. *See* Dkt. No. 20, p. 5-7.

2.  Defendant FEROZE, MUHAMMAD's brother, was also arrested while boarding the same international flight on June 13, 2025, and was charged by complaint with one count of money laundering, in violation of 18 U.S.C. § 1957, in connection with a financial transaction involving FZ Medical. FEROZE was indicted for the same charge on June 18, 2025. *See* Dkt. No. 20, p. 8.

Representations to Pretrial Services

3.  Following their June 2025 arrests, both defendants made representations to Pretrial Services regarding their assets and income. Generally, each defendant represented to Pretrial Services that he had minimal assets and income from one source. Based on the discussion below, the government believes the representations made by defendants were inaccurate.

4.  On June 18, 2025, the Court set conditions of release. *See* Dkt. No. 15 (MUHAMMAD); Dkt. No. 18 (FEROZE). Both defendants' release required that defendants refrain from violating any federal, state, or local law while on release and that they refrain from causing the submission of claims to any federal health care program. *Id.* The Court also ordered that each defendant sign a $100,000 unsecured appearance bond. *Id.*; Dkt. No. 17 (MUHAMMAD); Dkt. No. 19 (FEROZE).

2

Superseding Indictment

5. On December 4, 2025, a grand jury found probable cause to charge MUHAMMAD with five additional counts of health care fraud, in violation of 18 U.S.C. § 1347, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. *See* Dkt. No. 71.

6. The grand jury also found probable cause to charge FEROZE with the six health care fraud counts, in violation of 18 U.S.C. § 1347, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956. *See id.* Additionally, Count Two of the original indictment charging FEROZE with money laundering in violation of 18 U.S.C. § 1957, is now set forth as Count Eight of the Superseding Indictment (and remains a charge as to FEROZE only). *See id.*

7. The Superseding Indictment alleges the defendants participated in a health care fraud scheme at four separate laboratories, FZ MEDICAL (the laboratory identified in the original indictment), CLARITY TESTING SERVICES, LLC ("CLARITY"), WEST COAST MEDICAL LABS, INC. ("WEST COAST"), and SOCAL MED LAB, INC. ("SOCAL") (collectively, the "Labs"). *See id.*, p. 6, ¶1(s)-(v). The Superseding Indictment alleges that defendants provided false information to banks about ownership and control of the Labs. *See id.* at 15, ¶ 6. Individuals A, B, and C, were identified as the on-paper owners of the Labs. *See id.* at p. 7-8, ¶1(z)-(bb). The Superseding Indictment alleges that the health care scheme involved the submission of nearly $300 million in fraudulent claims to Medicare, Medicaid, and private health

3

insurers for COVID-19 testing services that were not actually provided, for which the Labs were paid at least approximately $65 million. *See id.,* p. 10, ¶8. The Superseding Indictment alleges that the health care fraud scheme continued through September 2025, *see id.* at p. 8, ¶2, months following defendants' indictment and the imposition of the conditions of release.

8. The Superseding Indictment further alleges that defendants participated in a concealment money laundering conspiracy with proceeds of the health care fraud scheme, transmitting at least approximately $35 million in fraud proceeds through payments to luxury real estate developers located in the United Arab Emirates ("UAE"), a precious metals dealer for the purchase of gold bars, car dealerships for purchases of luxury vehicles, title companies for the purchase of domestic real estate for properties in which defendants and their relatives reside, a holding company owned by defendants' relative, and other bank accounts held by business entities controlled by defendants and/or their relatives. *See id.,* p. 14-17.

9. The Superseding Indictment further alleges that defendants participated in money laundering conspiracy ***while on release***, in violation of 18 U.S.C. § 3147. *See id.* at p. 17. For example, on June 24, 2025, an account held by WEST COAST at Financial Institution 1, for which MUHAMMAD was a signatory, transferred $460,000 to an Illinois auto dealer in connection with the purchase of two vehicles. The Illinois auto dealer produced documents demonstrating that the funds were used to purchase a 2020 Ferrari F8 Tributo and 2024 BMW M3. While the

official purchaser of the vehicles was identified on State of Illinois tax documentation as the entity identified as Auto Dealer 1 in the Superseding Indictment, a purported wholesale auto dealer in Wisconsin which is owned by the defendants' relative, the purchase records reveal that the purchaser presented FEROZE's Illinois drivers' license when the vehicles were purchased. Additionally, as previously set forth in the government's motion to modify conditions of FEROZE's release filed on October 23, 2025, FEROZE was charged with various traffic offenses while driving the Ferrari on August 16, 2025, and while driving the BMW on July 2 and August 2, 2025. *See* Dkt. No. 58.

10. At the time of their arrest, defendants were in the possession of another individual's identification, Social Security card, and credit and business cards (the person identified as Individual B in the Superseding Indictment). Moreover, identification and bank records demonstrate that MUHAMMAD has used different iterations and spellings of his name in the past.

## ARGUMENT

11. The defendants' representations to Pretrial Services in June 2025 regarding their income and assets were demonstrably false. Defendants each have signatory authority on multiple bank accounts with funds well in excess of what was represented to Pretrial Services. As alleged in the Superseding Indictment, Defendants control additional Illinois entities, including Clean Environmental LLC, which has substantial real estate holdings (the purchases of which were funded by

5

transfers from laboratory bank accounts) and an operational laundromat business, and Feroz Consolidates USA Inc., *see* Dkt. No. 71 at p. 12, ¶1(b)-(c), each of which have received millions of dollars from the Labs. Additionally, per their representations to banks, each defendant is the Chief Executive Officer or Manager of and control bank accounts for additional purported healthcare providers in Illinois and Texas. Moreover, the Labs transferred over $8 million to a precious metals dealer for purchases of gold bars, at least some of which were picked up from the metals dealer by FEROZE. Over $15 million has been transferred to three real estate developers located in the UAE, including over $14 million to a developer with which FEROZE has a purchase contract.

12. A grand jury has found probable cause that defendants engaged in the money laundering conspiracy after they were charged in the initial indictment. *See* Dkt. No. 71.

13. Pursuant to 18 U.S.C. § 3142(f)(2)(A), Defendants present a serious risk of flight. Entities they control have transferred over $14 million to overseas real estate developers, including an entity with which FEROZE has a contract. They were initially arrested while on one-way overseas flight. In the two years leading up to their arrest, FEROZE and MUHAMMAD each traveled to UAE on three occasions. MUHAMMAD represented to CBP officers that the purpose of defendants' January 2024 travel to the UAE was to purchase/look at real estate. During their recent travel

6

overseas, defendants have shared with CBP personnel that they were, *inter alia*, visiting childhood friends and family.

14.     As a result of their significant omissions and misrepresentations to Pretrial Services with respect to their income and assets, including extensive investments in real estate in UAE (a country with which the United States has no extradition treaty), Pretrial Services and the Court were deprived of critical information necessary to properly assess defendants' risk of nonappearance in this case. Had the government been aware of the full extent of defendants' wealth and money laundering activities, the government would not have agreed to an unsecured bond of any amount in this case.

15.     Additionally, since the original order setting conditions of release was entered in this case, multiple factors have significantly increased defendants' risk of non-appearance. First and foremost, defendants have flagrantly violated their conditions of release by continuing to commit concealment money laundering and conspiring to do so.  Second, as a result of the Superseding Indictment, defendants are now facing much more serious charges carrying significantly higher Sentencing Guidelines and a significantly higher total statutory maximum sentence. Third, at the time of their initial arrest, as they were traveling on a one-way ticket overseas,

defendants were carrying identification cards and credit cards in the name of Individual B, the paper owner of SOCAL, who had previously left the United States.[1]

16.     In light of all of the above factors, including information not previously revealed to Pretrial Services relating to ownership of overseas real estate, defendants' misrepresentations and omissions to Pretrial Services with respect to their assets and income, defendants' flagrant violations of their terms of release, and the significantly higher statutory maximum sentences and Sentencing Guidelines associated with the new charges set forth in the Superseding Indictment, under 18 U.S.C. § 3142(c)(1), at least the following additional conditions of release should be imposed upon defendants as the least restrictive combination of conditions to reasonably assure their appearance and address their significant risk of flight:

> a. Impose location monitoring, including through an ankle monitor, to enforce conditions restricting defendants' travel to the Northern District of Illinois and to bar defendants from traveling to international airports within the Northern District of Illinois; and
>
> b. Require each defendant to provide a $500,000 secured bond using funds that do not constitute fraud proceeds.

### **CONCLUSION**

WHEREFORE, pursuant to Title 18, United States Code, Section 3142, the government respectfully moves this Court to modify defendants' conditions of release to include the following additional conditions of release:

---

[1] At the time of the arrest, the government was not yet aware of defendants' involvement in SOCAL or of any fraudulent submitted through SOCAL. As a result, the full significance of this evidence was not yet apparent to the government.

a.   Imposition of location monitoring, including through an ankle monitor, to enforce conditions restricting defendants' travel to the Northern District of Illinois and to bar defendants from traveling to international airports within the Northern District of Illinois;

b.   Require each defendant to provide a $500,000 secured bond using funds that do not constitute fraud proceeds; and

c.   For any other relief this Court deems appropriate.

Respectfully Submitted,

LORINDA LARYEA
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

*/s/ Kelly M. Warner*
KELLY M. WARNER
Trial Attorney
U.S. Department of Justice
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604

Dated: December 17, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties.

/s/ Kelly M. Warner
KELLY M. WARNER
Trial Attorney

10